104. As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*: (a) causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plan language they were paying Neurontin claims for off-label uses; (b) deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiffs and members of the Classes paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective; (c) publishing or causing to have published materials containing false information upon which physicians, Plaintiffs and members of the Classes relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and (d) actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

105. Defendants' scheme was calculated to ensure that Plaintiffs and the Classes would pay claims for Neurontin to treat a wide variety of uses which Defendants knew were not necessarily treatable with Neurontin.

106. Each of Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

107. Defendants engaged in a pattern of racketeering activity intending to defraud Plaintiffs and the Classes.

108. The above described racketeering activities amounted to a common course of

conduct intended to deceive Plaintiffs and the Classes. Defendants' criminal acts of racketeering had the same pattern and similar purpose of defrauding Plaintiffs and the Classes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs and the members of the Classes. Defendants' fraudulent activities are part of their regular way of conducting their ongoing business and constitute a continuing threat to the property of Plaintiffs and the Classes.

109. The pattern of racketeering activity alleged herein and the AMM Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the AMM Enterprise.

110. Plaintiffs and members of the Classes have been injured in their property by reason of these violations in that Plaintiffs and members of the Classes have made millions of dollars in overpayments for Neurontin.

111. Plaintiffs and the members of the Classes relied, to their detriment, on Defendants' fraudulent misrepresentations and omissions.

112. Plaintiffs' and the Classes' injuries were directly and proximately caused by Defendants' racketeering activity as described above.

113. By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiffs and the Classes for three times the damages Plaintiffs and the Classes have sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT THREE
### Violation of 18 U.S.C. § 1962(c)
### (The Promotion Strategist Enterprise)
### Class 1 and 2

114. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

115. Defendants are the "persons" within the meaning of § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

116. The enterprise is an association in fact within the meaning of § 1961(4) consisting of each of the three Defendants, Pfizer, Warner-Lambert and Parke-Davis, including their employees and agents, and the non-physician technical writers, physician "authors," and Vendors located throughout the United States who participated in the fraudulent schemes described above (the "Promotional Strategist Enterprise"). The Promotional Strategist Enterprise is an ongoing organization and functions as a continuing unit. The Promotional Strategist Enterprise was created and/or used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendant "persons" are distinct from the Promotional Strategist Enterprise.

117. The Promotional Strategist Enterprise falls within the meaning of 18 U.S.C. § 1961(4), and consists of a group of "persons" associated together for the common purposes of marketing and selling Neurontin to Plaintiffs and the Classes and earning profits therefrom.

118. The Promotional Strategist Enterprise engaged in and affected interstate commerce, because, *inter alia*, it marketed, sold, purchased or provided Neurontin to thousands of individuals throughout the United States.

119. Each Defendant has exerted control over the Promotional Strategist Enterprise, and each has participated in the operation or management of the affairs of the Promotional Strategist Enterprise, through the following actions:

(a) Defendants have asserted direct control over the information and content disseminated to doctors and the public regarding the medical safety and efficacy of Neurontin for off-label uses in articles published across the country;

(b) Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to doctors throughout the United States; and

(c) Defendants have placed their own employees and agents in positions of authority and control in the Promotional Strategist Enterprise.

120. Defendants have conducted and participated in the affairs of the Promotional Strategist Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

121. In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiffs and the Classes depend on the honesty of Defendants in representing the safety and efficacy of Neurontin's uses.

122. As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*: (a) causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plan language they were paying Neurontin claims for off-label uses; (b) deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiffs and members of the Classes paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective; (c)

publishing or causing to have published materials containing false information upon which physicians, Plaintiffs and members of the Classes relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and (d) actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

123. Defendants' scheme was calculated to ensure that Plaintiffs and the Classes would pay claims for Neurontin to treat a wide variety of uses which Defendants knew were not necessarily treatable with Neurontin.

124. Each of Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

125. Defendants engaged in a pattern of racketeering activity intending to defraud Plaintiffs and the Classes.

126. The above described racketeering activities amounted to a common course of conduct intended to deceive Plaintiffs and the Classes. Defendants' criminal acts of racketeering had the same pattern and similar purpose of defrauding Plaintiffs and the Classes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs and the Classes. Defendants' fraudulent activities are part of their regular way of conducting their ongoing business and constitute a continuing threat to the property of Plaintiffs

45

and the Classes.

127. The pattern of racketeering activity alleged herein and the Promotional Strategist Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Promotional Strategist Enterprise.

128. Plaintiffs and members of the Classes have been injured in their property by reason of these violations in that Plaintiffs and members of the Classes have made millions of dollars in overpayments for Neurontin.

129. Plaintiffs and the members of the Classes relied, to their detriment, on Defendants' fraudulent misrepresentations and omissions.

130. Plaintiffs' and the Classes' injuries were directly and proximately caused by Defendants' racketeering activity as described above.

131. By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiffs and the Classes for three times the damages Plaintiffs and the Classes have sustained, plus the cost of this suit, including reasonable attorneys' fees.

### COUNT FOUR
**Violations of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c)
Class 1 and 2**

132. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

133. Section 1962(d) of the RICO statute provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

134. Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

46

The object of this conspiracy was to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprises described above through a pattern of racketeering activity.

135. As detailed above, Defendants' co-conspirators have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiffs and members of the Classes.

136. The nature of the above described Defendants' co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

137. As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiffs and members of the Classes have been and are continuing to be injured in their business or property as set forth more fully above.

138. Defendants have sought to and have engaged in the commission of overt acts, including the following unlawful racketeering predicate acts:

    (a) Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1342;

    (b) Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346; and

    (c) Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and

47

1346.

139. Defendants' violations of the above federal laws and the effects thereof, detailed above, are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts constituting a pattern of racketeering activity is imposed by the Court.

## COUNT FIVE
### Tortious Interference with the Physician-Patient Relationship
### Classes 1 and 2

140. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

141. The physicians detailed above owed their patients fiduciary obligations of trust, loyalty, confidentiality and due care, including a duty to provide educated and honest medical advice to patients regarding the medical safety and efficacy of Neurontin to treat off-label conditions.

142. Physicians breached their fiduciary duties by recommending and prescribing Neurontin to patients to treat conditions for which the drug was not proven to be safe and medically effective in exchange for compensation from Defendants. These patients relied on their physicians' medical advice with respect to treatment options, and because trust and openness are at the heart of the physician-patient relationship, patients have an interest in knowing, and physicians have a duty to reveal, whether any external financial incentives have influenced the physicians' medical advice.

143. Defendants knew prescribing physicians owed these fiduciary duties to their patients. Nonetheless, as detailed above, Defendants intentionally interfered with the physician-patient relationship by providing substantial incentives and encouragement to physicians to relay

inaccurate and unsubstantiated medical advice to their patients regarding the medical safety and efficacy of Neurontin to treat off-label conditions. Defendants knew that physicians were providing such inaccurate medical advice to patients in violation of the physicians' fiduciary obligations.

144. Patients submitted Neurontin claims for payment to Plaintiffs and the Class based on the tainted and inaccurate medical advice provided by physicians regarding the safety and efficacy of Neurontin to treat off-label uses; advice which was influenced, corrupted and essentially purchased by Defendants.

145. Plaintiffs and members of the Classes suffered damage in that they paid claims for Neurontin which were the direct and proximate result of Defendants' tortious interference with the physician-patient privilege.

146. Plaintiffs and members of the Classes are therefore entitled to restitution of their payments for Neurontin and an award of compensatory damages in an amount to be determined at trial.

## COUNT SIX
### Common Law Fraud - Class 1

147. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

148. Defendants have repeatedly made knowing misrepresentations and concealed facts to Plaintiffs, the Class and others concerning the off-label uses for which claims were submitted to Plaintiffs and the Class to pay for Neurontin to treat non-FDA approved medical conditions.

149. These representations were materially false in that they represented that the

submitted claims were to pay for FDA-approved uses of Neurontin when in fact they were to pay for off-label uses, causing Plaintiffs and the Class to unwittingly pay for Neurontin in violation of their healthcare policies.

150.    Plaintiffs and the members of the Class reasonably relied upon the veracity of the Neurontin claims submitted to pay for non-FDA approved uses.

151.    Defendants knew that the Neurontin claims concealing the off-label purposes for which they were being submitted were being relied upon by Plaintiffs and the Class for the purpose of determining whether to pay for such claims in accordance with their policies.

152.    Plaintiffs and the Class suffered damage in the form of payments for Neurontin to cover off-label uses.

153.    Plaintiffs and the members of the Class are therefore entitled to restitution of their payments for Neurontin to treat off-label uses and an award of compensatory damages in an amount to be determined at trial.

## COUNT SEVEN
### Common Law Fraud - Class 2

154.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

155.    Defendants have repeatedly made knowing misrepresentations and concealed facts to Plaintiffs, the Class and others concerning the medical safety, efficacy and necessity of Neurontin for off-label uses.

156.    These representations were materially false in that Neurontin has no medical necessity other than for its FDA-approved uses.

157.    Plaintiffs and the members of the Class reasonably relied upon the veracity of

Defendants' representations regarding the safety, efficacy and necessity of Neurontin for off-label uses.

158. Defendants knew that the scientifically unsupported studies, publications and representations were being relied upon by physicians, Plaintiffs and the Class for the purpose of prescribing or paying claims for Neurontin to treat such off-label conditions for which the drug is not scientifically proven to be safe or medically efficacious.

159. Plaintiffs and the Class suffered damage in the form of payments for Neurontin to cover conditions for which Neurontin was not safe or medically efficacious.

160. Plaintiffs and the members of the Class are therefore entitled to restitution of their payments for Neurontin and an award of compensatory damages in an amount to be determined at trial.

## COUNT EIGHT
### Violations of the Consumer Protection Statutes of the 50 States
### Classes 1 and 2

161. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

162. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in knowing violation of any and all state consumer protection statutes when Defendants knowingly and intentionally misrepresented the medical safety, efficacy and necessity of Neurontin to treat non-FDA approved uses and caused physicians to submit claims to Plaintiffs and the Class misrepresenting or concealing the off-label uses for which Neurontin was being prescribed.

163. Defendants knew that the health insurance policies issued by Plaintiffs and

51

(t)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

(u)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

(v)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

(w)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

(x)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

(y)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

(z)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

(aa)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

(bb)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

(cc)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

(dd)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

(ee) Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

(ff) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

(gg) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 *et seq.*;

(hh) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

(ii) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

(jj) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

(kk) Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

(ll) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

(mm) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

(nn) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

(oo) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

(pp)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

(qq)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

(rr)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

(ss)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

(tt)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

(uu)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

(vv)    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq.*;

(ww)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

(xx)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and

(yy)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*

165.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Class have suffered actual economic

damage by paying for Neurontin to treat conditions for which the drug is not FDA approved and is not medically necessary.

## COUNT TEN
### Restitution/Disgorgement for Unjust Enrichment - Class 1

166. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

167. As the intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefitted from the payment of claims for Neurontin by Plaintiffs and members of the Class to treat conditions for which the drug is not FDA-approved.

168. Defendants have voluntarily accepted and retained these profits and benefits, derived from Plaintiffs and the Class, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs and the Class paid for Neurontin when they otherwise would not have but for Defendants' improper actions.

169. By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class, who are entitled in equity to seek the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent, and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## COUNT ELEVEN
### Restitution/Disgorgement for Unjust Enrichment - Class 2

170. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

171. As the intended and expected result of their conscious wrongdoing as set forth in

this Complaint, Defendants have profited and benefitted from the payment of claims for Neurontin by Plaintiffs and members of the Class to treat conditions for which the drug is not medically necessary.

172.  Defendants have voluntarily accepted and retained these profits and benefits, derived from Plaintiffs and the Class, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs and the Class paid for Neurontin when they otherwise would not have but for Defendants' improper actions.

173.  By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class, who are entitled in equity to seek the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent, and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## X. DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants in each claim for relief, jointly and severally, as follows:

(a)  On Plaintiffs' RICO claims, three times the damages Plaintiffs and the Classes have sustained as a result of Defendants' conduct, such amount to be determined at trial, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees;

(b)  On Plaintiffs' claims for tortious interference with the physician-patient relationship, common law fraud, damages in the amount of Plaintiffs' and the Classes' payment for Neurontin to treat conditions for which the drug was not approved by the FDA for which it was not medically necessary, such amounts to be determined at trial, plus Plaintiffs' costs in this

suit, including attorneys' fees;

(c) On Plaintiffs' claims under the Consumer Protection Statutes of all fifty states, all measures of damages allowable under such statutes, such amount to be determined at trial, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees;

(d) On Plaintiffs' claims for Unjust Enrichment, recovery in the amount of Plaintiffs' and the Classes' payment for Neurontin to treat conditions for which the drug was not approved by the FDA and for which it was not medically necessary, such amounts to be determined at trial, plus Plaintiffs' costs in this suit, including attorneys' fees;

(e) Awarding Plaintiffs and the Classes other appropriate equitable relief;

(f) Awarding Plaintiffs their costs and expenses in this litigation, including reasonable attorneys' fees and expert fees; and

(g) Awarding Plaintiffs and the Classes such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 13, 2004

Respectfully submitted,

JOEL Z. EIGERMAN

*/s/ Joel Eigerman*

Joel Z. Eigerman (Bar No. 152000)
50 Congress Street, Suite 200
Boston, MA 02109
Telephone: (617) 367-0014
Facsimile: (617) 523-5612

59

Linda P. Nussbaum
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
150 East 52nd Street, 30th Floor
New York, NY 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

- and -

Michael D. Hausfeld
Marlene F. Gibbons
Justine J. Kaiser
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Mark D. Fischer
Mark Sandmann
**RAWLINGS & ASSOCIATES, PLLC**
325 W. Main Street
Louisville, KY 40202
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

*Attorneys for Plaintiff*