```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
_____
                                    )
IN RE NEURONTIN MARKETING           )
AND SALES PRACTICES LITIGATION      )
_____)
                                    )
THIS DOCUMENT RELATES TO:           ) CIVIL ACTION NO. 04-cv-10739-PBS
                                    )
KAISER FOUNDATION HEALTH            )
PLAN, INC., et al.                  )
                                    )
            v.                      )
                                    )
PFIZER, INC., et al.                )
_____)
```

**MEMORANDUM AND ORDER**

August 31, 2011

Saris, U.S.D.J.

After a five-week trial in which 40 witnesses testified and more than 400 exhibits were admitted into evidence, this Court issued an 143-page opinion finding that defendants engaged in fraudulent business acts or practices under California's Unfair Competition Law and awarded plaintiffs $95,286,518 in restitution. In re Neurontin Mktg. & Sales Practices Litig., 748 F. Supp. 2d 34 (D. Mass. 2010) (hereinafter "Findings"). Judgment was entered on February 22, 2011 (Docket No. 3326).

Defendants have filed a Motion for Amended and Additional Findings pursuant to Fed. R. Civ. P. 52(b) (Docket No. 3364). The Court **ALLOWS IN PART** and **DENIES IN PART** defendants' motion for amended and additional findings. The Court writes now to

address several issues that were not fully developed at trial and were flagged in post-judgment briefing. Defendants requested certain other clarifications, which, where useful, are incorporated in an amended findings of fact and conclusions of law issued with this order.

## DISCUSSION

Federal Rule of Civil Procedure 52(b) provides that "[o]n a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings-or make additional findings-and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Rule 52(b) motions are designed "to correct, clarify, or amplify the findings." 9 J. Moore et al., Moore's Federal Practice § 52.60[3] (3d ed. 2011). However, a party may not utilize a Rule 52(b) motion to assert new theories not raised at trial, or "to rehash old arguments already considered and rejected by the trial court." Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990). Ultimately, the decision to grant or deny a motion to amend lies within the discretion of the Court. Sequa Corp. v. GBJ Corp., 156 F.3d 136, 143 (2d Cir. 1998) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971)).

**A.   Kaiser's Corporate Structure**

Defendants state that, because Kaiser Foundation Health Plan's subsidiaries are not named as parties to the complaint,

the parent health plan has no standing to recover restitution on their behalf.

This issue was raised prior to trial in an objection filed by defendants. (Docket No. 2538 at 7.) The Court addressed the issue before the trial began, but counsel for Kaiser assured the Court that it was not necessary to explicitly join the subsidiaries as named parties because the "testimony will clearly show . . . contracting, purchasing is all from the parent company" and accordingly the parent had standing to recover damages for prescriptions written to subsidiary members. (Trial Tr. vol. 1, 26-27, Feb. 22, 2010.) Kaiser's counsel now concedes that her statement regarding purchasing was a mistake, and that in fact Kaiser Foundation Health Plan only performs contracting, as opposed to purchasing, for the subsidiaries. In post-trial briefing, defendants raised the issue in a footnote buried among a multitude of arguments that they pursued more zealously. (See Docket No. 2808-3 at 2 n.1.) It is only now, after judgment, that the issue has been pressed wholeheartedly. Indeed, it was only after the Court issued an order requesting further briefing on the issue that either party provided more than one paragraph of legal analysis. (See Electronic Order, July 18, 2011.)

To address this issue, the Court must fully address the relationship between Kaiser Foundation Health Plan and its wholly-owned regional subsidiaries. Kaiser Foundation Health Plan is the parent corporation of six regional health plans:

Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio. Kaiser Foundation Health Plan directly provides medical coverage to beneficiaries in California and Hawaii. Although the regional health plans were not named plaintiffs in the complaint, plaintiffs alleged: "As of December 2004, Kaiser Foundation Health Plan, Inc. had 8.2 million members in nine states and the District of Columbia, with over 6 million members in California. The remaining members are in Colorado, Georgia, Maryland, Virginia, Oregon, Washington, Hawaii, Ohio and the District of Columbia." (Third Amended Compl. ¶ 7 (Docket No. 583).)

The question here is whether Kaiser Foundation Health Plan, as the parent company, has standing to recover damages suffered by its subsidiaries, and if not, whether the subsidiaries may now be joined as parties to this case.

The Supreme Court has held, in the context of a challenge to California's tax statutes, that a parent company does have Article III standing on the basis of injury to a subsidiary. Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd., 493 U.S. 331, 335-36 (1990). The Court then addressed nonconstitutional prudential considerations, which require that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests

of third parties." Id. at 337 (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)).

As to prudential standing, courts look to a related principle of corporate law called the shareholder standing rule. Id. at 336-37. Generally, "a shareholder of a corporation possesses no personal or individual right of action for injury to the corporation, even an injury which reduces the corporation's net worth, because the injury suffered by the shareholder is merely incidental to the injury suffered by the corporation." Resolution Trust Corp. v. Fleischer, 848 F. Supp. 917, 922-23 (D. Kan. 1994) (citing K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1154 n.7 (10th Cir. 1985)). This rule is still applicable when the plaintiff is the sole stockholder of the injured corporation. See, e.g., Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 603 (6th Cir. 1988). More specifically, "[w]rongdoing to a subsidiary does not confer standing upon the parent company, even where the parent is the sole shareholder of the subsidiary." Tullett Prebon, PLC v. BGC Partners, Inc., No. 09-cv-5365-SRC, 2010 WL 2545178, at *4 (D.N.J. June 18, 2010); see also Aetna U.S. Healthcare, Inc. v. Columbia Cas. Co., No. 99-596, 1999 WL 554606, at *3 (E.D. Pa. July 20, 1999) (holding plaintiff company had no standing to bring suit based on harm to wholly owned indirect subsidiary); Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co., 861 F. Supp. 179, 181 (E.D.N.Y. 1994) (holding that "[a] corporation does not

have standing to assert claims belonging to a related corporation, simply because their business is intertwined"); Site Microsurgical Sys., Inc. v. Cooper Cos., Inc., 797 F. Supp. 333, 338-39 (D. Del. 1992) (rejecting argument that parent company of subsidiary patent holder had standing to sue for infringement, even though parent argued that it effectively controlled patent and had suffered lost sales of its product as a result of the infringement).

Under this line of cases, Kaiser Foundation Health Plan does not have standing to recover on behalf of the regional subsidiaries. However, it does have standing to sue on its own behalf, as it has directly incurred 77% of the losses. (Trial Exhibit ("TX") 268.)

To address this late-arising issue, Kaiser Foundation Health Plan contends that this Court should join the six regional subsidiaries, pointing out that there is no prejudice to Pfizer from a post-judgment addition. Kaiser points out that there was extensive discovery and expert analysis of the subsidiaries. Federal Rule of Civil Procedure 21 states, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rule 21 "specifically permits a change in parties 'at any stage in the action.'" 7 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1688.1 (3d ed. 2001). Courts have held

that parties may be added after trial has concluded "to add a party who for some innocent reason has not been made a party to the action and whose presence is necessary or desirable." Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 344 (D. Mass. 1993); see also Du Shane v. Conlisk, 583 F.2d 965, 967 (7th Cir. 1978) (holding that "a party can be added sua sponte by the court after judgment"). In fact, the Supreme Court added parties under Rule 21 on appeal in Mullaney v. Anderson, 342 U.S. 415 (1952), stating

> The addition of these two parties . . . can in no wise embarrass the defendant. Nor would their earlier joinder have in any way affected the course of the litigation. To dismiss the present petition and require . . . plaintiffs to start over in the (state court) would entail needless waste and runs counter to effective judicial administration . . . .

342 U.S. at 417. However, courts typically deny a request that comes so late in the litigation that it will either delay the case or prejudice any of the parties to the action. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969).

In Ohio Cellular Products Corp. v. Adams USA, Inc., 175 F.3d 1343, 1348 (Fed. Cir. 1999), the Federal Circuit noted that it is an "uncommon situation where an individual is sought to be added as a party after entry of judgment." Ohio Cellular involved an award of attorney's fees to third-party plaintiffs, who sought post-judgment to amend their third-party complaint to add the sole shareholder of Ohio Cellular as a third-party defendant and

to amend the judgment so as to subject the shareholder to individual liability for fees.  The Federal Circuit found that because the shareholder would not suffer undue prejudice if added as a party, the district court did not abuse its discretion by allowing joinder.  See id. at 1349.  Ohio Cellular was reversed by the Supreme Court because the district court's immediate amendment of the judgment to impose individual liability on the shareholder did not provide the shareholder with due process.  Nelson v. Adams USA, Inc., 529 U.S. 460, 463 (2000).  However, the Federal Circuit's holding in Ohio Cellular regarding post-judgment joinder is still good law.  Here, there would be no such due process concerns because the subsidiaries have been deeply involved in litigation discovery, and have posed no objection to Kaiser's representing them.

Because a motion to join a party as a plaintiff also requires an amendment of the pleadings, some courts have held that the moving party must also satisfy the requirements of Federal Rule of Civil Procedure 15.  See Instituform Techs., Inc. v. Cat Contracting, Inc., 385 F.3d 1360, 1372 (Fed. Cir. 2004); Hinson v. Norwest Fin. South Carolina, Inc., 239 F.3d 611, 618 (4th Cir. 2001).  "[W]here the motion to amend comes after responsive pleadings have been served, the standard for adding a party is the same whether the motion is made under Rule 15 or Rule 21 because in both cases the moving party must demonstrate an absence of prejudice to the nonmoving party."  Data General,

825 F. Supp. at 344 (citing Kalman v. Berlyn Corp., 914 F.2d 1473, 1479 (Fed. Cir. 1990); Wright & Miller, 6 Federal Practice and Procedure § 1474 (1986)). It is not clear if this case law applies where a court acts sua sponte.

Defendants contend, however, that the subsidiaries may not be joined as plaintiffs under Rule 15 because post-trial Rule 15 motions may only be granted if the amendment concerns issues presented at trial by the consent of the parties. Rule 15(b) states:

> Amendments During and After Trial
>
> (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move - at any time, even after judgment - to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

It is undisputed that the possibility of joinder of the regional subsidiaries as plaintiffs was not tried by consent. Indeed, Kaiser never sought to join the regional subsidiaries prior to trial, and the defendants objected to any presentation of evidence relating to damages caused by Pfizer's

-9-

misrepresentations to Kaiser's subsidiaries prior to trial. (Docket No. 2538.) Accordingly, this Court cannot entertain a motion to amend under Rule 15(b)(2). However, courts have held that motions to amend pursuant to Rule 15(b)(1) are appropriate post-trial if no prejudice to the defendant would result. See, e.g., Hillburn v. Maher, 795 F.2d 252 (2d Cir. 1986) ("The import of Rules 15(a) and (b) combined is that . . . if the motion is made after trial, and the issues have not been tried with the express or implied consent of the parties, the motion may be granted if the party against whom the amendment is offered will not be prejudiced by the amendment and should be granted in the absence of such prejudice if the interests of justice so require."); Annunziata v. City of New York, 575 F. Supp. 2d 491, 497 n.38 (S.D.N.Y. 2008) (allowing in part a post-trial Rule 15(b)(1) motion to amend); Ragusa v. United Parcel Serv., 05-cv-6187-WHP, 2008 WL 4200288, at *2 (S.D.N.Y. Sept. 12, 2008) ("Pursuant to Rule 15(b)(1) of the Federal Rules of Civil Procedure, the Court may permit the pleadings to be amended during or after trial if "a party objects that evidence is not within the issues raised in the pleadings . . . ."). The Court finds that the subsidiaries may be joined as plaintiffs under Rules 15 and 21, so long as there is no prejudice to the defendants.

In determining whether Pfizer would be prejudiced by joinder of the Kaiser subsidiaries, the Court must consider "whether [the

defendant] had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory." Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1086 (2d Cir. 1977) (citing 3 Moore's Federal Practice § 15.13(2) (2d ed. 1966)). Under this rationale, if Pfizer understood that the issue of the subsidiaries' damages was before the Court and jury prior to trial, then there was no prejudice. Gallindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. 1986). I conclude that there would be no prejudice to Pfizer if the Court permitted joinder of the six regional subsidiary health plans. It has been clear since February 2005 that Kaiser Foundation Health Plan was pursuing damages on behalf of "8.2 million members in nine states and the District of Columbia." (Docket No. 583.) Pfizer has not contended that it was not given access to discovery pertaining to the regional subsidiaries. A central argument made by Pfizer has consistently been that the regional subsidiaries made separate and independent formulary decisions regarding Neurontin. Pfizer was provided with purchase data and plaintiffs' expert's analysis of the Neurontin purchases made by each region. (See, e.g., TX 268.) Pfizer unquestionably understood throughout pretrial litigation and during the trial that the issue of damages to the subsidiaries was before the court and jury. Allowing joinder of the regional subsidiaries does not deprive defendants of the opportunity to present a different defense or submit different

evidence at trial.  Moreover, because the parties have proceeded with this case as though the subsidiaries' damages were being pursued by Kaiser Foundation Health Plan, the logistics of joining the subsidiaries post-judgment are exceedingly simple. The total amount of restitution has already been determined, and there will be no further potential exposure for defendants.  Any delay caused by joinder would be minimal.  Kaiser Foundation Health Plan and its subsidiaries may determine themselves how to divide the amount of restitution among the companies.  The Court finds that joining the parties under Rule 21 would cause no prejudice to Pfizer.

The Court does not envision a problem dividing up the restitution among the subsidiaries.  To the extent there is prejudice to the subsidiaries on this issue, Pfizer does not have standing to assert it.  The subsidiaries shall inform the Court within thirty days of any objections.

Finally, Pfizer argues that the subsidiaries may not be joined as parties to this case because they will be time-barred. This argument has no merit.  The First Circuit has held that the relation-back rule enunciated by Federal Rule of Civil Procedure 15(c) applies to plaintiffs added pursuant to Rule 21.  <u>Young v. Lepone</u>, 305 F.3d 1, 14 (1st Cir. 2002) ("Although the text of Rule 15(c)(3) seems to contemplate changes in the identity of defendants, we have recognized that the rule can be applied to amendments that change the identity of plaintiffs." (citing

Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, 814 F.2d 32, 35 (1st Cir. 1987))). "Thus, if the prerequisites prescribed in Rule 15(c) have been met, the addition of a party under Rule 21 should relate back and prevent the successful interposition of a statute of limitations defense." 7 Wright & Miller, Federal Practice & Procedure § 1688 (3d ed. 2001).

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

Schiavone v. Fortune, 477 U.S. 21, 29 (1986). There can be no dispute that the subsidiaries' claims arose out of the conduct set forth is Kaiser Foundation Health Plan's complaint. As the Court concluded in its findings of fact, each regional subsidiary contracted with a Permanente Medical Group that relied on monographs from Kaiser's central Drug Information Service in making formulary decisions. Pfizer's misrepresentations to the Drug Information Service, along with its suppression of negative clinical trials involving Neurontin, thereby affected each of the regional subsidiaries in the same way they affected Kaiser Foundation Health Plan. In addition, the Court has already found that Pfizer will not be prejudiced by joinder or relation back. The subsidiaries may only assert claims under the federal RICO

-13-

statute and the California Unfair Competition Law.  Pfizer will face no additional liability, as the extent of damages and restitution have already been determined by the jury and this Court.  Under the standard set out by the Supreme Court in Schiavone, the regional subsidiaries can satisfy the requirements of Rule 15(c), and their claims are not time-barred.

Joinder of the regional subsidiaries does not affect the Court's choice of law analysis.  See Findings at 126-30.  The Court focused on Kaiser's Drug Information Service's reliance on Pfizer's misrepresentations.  Because the Drug Information Service is located in California, the Court found that it was appropriate to apply the UCL to all of plaintiffs' claims.

In the interests of justice, the Court will join the six regional subsidiaries as plaintiffs unless they object within THIRTY days of the date of this order.

**B.  ICD-9 Codes for Bipolar Disorder**

Defendants claim that the Court failed to recognize that plaintiffs' causation and damages evidence was not specific to bipolar disorder, as opposed to other mood disorders for which plaintiffs presented no evidence of inefficacy or injury.

In her analysis, plaintiffs' causation expert, Dr. Meredith Rosenthal, included eleven distinct "ICD-9" codes, which are developed by the World Health Organization and used to classify diagnoses.  The codes included by Dr. Rosenthal are: (1)

affective psychoses unspecified; (2) major depressive disorder, single episode; (3) major depressive disorder, recurring; (4) bipolar affective disorder, manic; (5) bipolar affective disorder, depressed; (6) bipolar affective disorder, mixed; (7) bipolar affective disorder, unspecified; (8) manic-depressive psychosis, other and unspecified; (9) neurotic depression; (10) brief depressive reaction; (11) depressive disorder, not elsewhere classified.  (TX 405-N.)  She limited the universe of data for the ICD-9 codes to those prescriptions that were written by psychiatrists.  (Trial Tr. vol. 11, 18, Mar. 8, 2010.)  Dr. Rosenthal was given this group of ICD-9 codes by counsel for Kaiser.  (See TX 405-N (listing "ICD9 Code Categorization," "[a]s provided by counsel.)  Indeed, Dr. Rosenthal explained on cross-examination that the category she refers to as "bipolar" includes other affective disorders such as depression.  (Trial Tr. vol. 11, 84-85.)  Specifically, six of the ICD-9 codes expressly refer to bipolar disorder, and five to depression.  (Id. at 92.)

In post-judgment briefing, defendants argue vigorously that because plaintiffs have not proven that there is no scientifically accepted evidence showing that Neurontin is ineffective in the treatment of depression, they should not be awarded damages for prescriptions written under the depression ICD-9 codes.  To begin with, it bears remembering that it is illegal to market Neurontin for depression, an off-label indication.  Moreover, there is undisputed evidence that

Neurontin <u>exacerbates</u> depression; it does not treat it. (<u>See, e.g.</u>, TX 207 at 117 (FDA Medical-Statistical Review finding that, in patients taking Neurontin, depression "may become worse and require intervention or lead to suicide"); TX 507 at 2 (Neurontin label including information about depression and "suicide gesture" as adverse events observed during clinical trials); Trial Tr. vol. 13, 69, 71, Mar. 10, 2010 (testimony of plaintiffs' expert, Dr. Curt Furberg, stating that the data show "a 65 percent increase in risk of depression with the drug compared to placebo").) Therefore, there is quite a bit of evidence that Neurontin is ineffective in treating depression.

Even if this were not so, Dr. Rosenthal's methodology is reliable because her calculation of the percentage of Neurontin prescriptions written to treat bipolar disorder (as calculated using the ICD-9 codes listed above) is quite close to Pfizer's own estimate in 2000 (14.7%) of the percentage of Neurontin prescriptions for bipolar and schizoaffective disorders. (<u>See</u> TX 143 at 14.) Pfizer found that bipolar disorders alone accounted for 12.7% of Neurontin prescriptions, which is close to Dr. Rosenthal's estimate. (<u>Id.</u>)

Second, defendants challenge one of the important assumptions underlying Dr. Rosenthal's causation analysis with respect to bipolar disorder: namely, that but for defendants' fraudulent promotion of Neurontin for the treatment of bipolar disorder, Pfizer would not have promoted Neurontin to

-16-

psychiatrists at all during the period in question. (Trial Tr. vol. 11, 18.) In 1999, Dr. Atul Pande, a Parke-Davis employee, published an article in the Journal of Clinical Psychopharmacology entitled "Treatment of Social Phobia with Gabapentin: A Placebo-Controlled Study."[1] This article stated that "[i]n clinical studies of patients with epilepsy, gabapentin produced improvements in mood and general well-being." (TX 1324 at 342.) Defendants argue that the positive results of the social phobia study provided Pfizer with a non-fraudulent basis upon which to promote Neurontin to psychiatrists. The marketing evidence admitted at trial proves that Pfizer's interest in off-label marketing to psychiatrists was much more focused on bipolar disorder than social phobia. Any marketing to psychiatrists on the use of Neurontin to treat social phobia was de minimis. Therefore, the assumption used in Dr. Rosenthal's bipolar analysis was valid. Moreover, Dr. Rosenthal explicitly excluded the ICD-9 codes for social phobia, panic disorder and anxiety disorders. (See id. (excluding ICD-9 code 300.0 (Anxiety States) and ICD-9 code 300.2 (Phobic States).)

C. **Pfizer's Marketing to Neurologists**

---

[1] Social phobia is a disease where people are very afraid of social situations. It "is a potentially disabling condition where patients may not be able to interact [with others]." (Trial Tr. vol. 5, 28.) Social phobia is distinct from bipolar disorder, but may in some patients be comorbid (meaning co-existing) with bipolar disorder. (Id. at 29.)

The Court previously found that Pfizer mailed a March 1999 issue of Progress in Neurology to "all neurologists practicing the United States." Findings at 47. In making that finding, the Court mistakenly referred to a trial exhibit that discusses four separate mailings of different Progress in Neurology articles that were published in 2000. (See TX 92.) The Court now amends its findings to reference the correct trial exhibit, which proves that defendants mailed the March 1999 copy of Progress in Neurology to all neurologists practicing in the United States. (See TX 139 at 11657 (listing as a "1999 Key Strateg[y]," "Dannemiller CME Pain supplements mailed to universe of Neurologists and Anesthesiologists").)

## ORDER

Based on the foregoing reasons, the Court **DENIES IN PART** defendants' motion for amended and additional findings (Docket No. 3364), and **ALLOWS IN PART** as to those alterations included in the accompanying amended findings of fact and conclusions of law.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge